UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| SUSAN ARVIN,<br><br>Plaintiff,<br><br>v.<br><br>SUMIRIKO TENNESSEE, INC.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No.: 3:24-CV-160-TAV-JEM |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on defendant's motion for summary judgment [Docs. 19, 20]. Plaintiff responded in opposition [Doc. 23], and defendant filed a reply [Doc. 25]. Accordingly, this matter is ripe for review. *See* E.D. Tenn. L.R. 7.1(a). For the reasons that follow, defendant's motion for summary judgment [Docs. 19, 20] will be **DENIED in part** and **GRANTED in part**.

## I. Background

This action arises from the circumstances surrounding plaintiff's termination from SumiRiko Tennessee, Inc. ("SRK") [*see* Doc. 1]. SRK is a manufacturer of anti-vibration automotive parts [*Id.* ¶ 8]. Susan Arvin began working for SRK through a temp agency in August 2016 [Doc. 23, p. 4]. After approximately one year as a temporary employee, plaintiff applied for a full-time position as a "Production Associate" [*Id.*]. Plaintiff was hired for and served in that role from August 6, 2017, until July 12, 2021, when plaintiff quit to pursue a different job [Doc. 1 ¶ 12; Doc. 20, p. 1]. Plaintiff returned to work at SRK on July 26, 2021, where she remained employed until July 8, 2022 [Doc. 20, p. 1].

### A. Plaintiff's Job Duties

From August 2017 to 2020, plaintiff worked as a production associate at SRK, assigned to the "metal prep" job, which includes operating a machine that paints metal [Doc. 20, p. 5]. In January 2021, defendant assigned plaintiff to the "packout" job, which consists generally of inspecting metal parts and placing acceptable parts in boxes that are then removed from the packout area for shipment [*Id.*]. Each metal part has a written standard operating procedure ("SOP"), which employees must follow in inspecting and packing the parts [*Id.* at 5–6].

Although each metal part has its own written SOP, the duties are generally the same for each and include setting up the machine, picking up and placing boxes weighing 30 or more pounds onto a table, removing parts from the box, and placing "one part at a time in an inspection devi[c]e called a 'pokeo'" [*Id.* at 6]. If the pokeo sounds an alarm indicating that a part is defective, the employee removes the part, inspects it, and places it in a scrap bin [*Id.*]. Alternatively, if the pokeo determines that the part is acceptable, it releases the part into a tray that the employee picks up and places underneath the table [*Id.*]. Once the tray of acceptable metal parts is full, the employee removes the tray from below the table and places it onto a pallet next to their workstation [*Id.*].

### B. Plaintiff's Medical Condition and Leaves of Absence

On multiple occasions between August 2017 and July 2021, defendant granted plaintiff medical leave for various reasons [*Id.* at n.2]. Upon return from each period of

leave, plaintiff never informed defendant of any limitations that would impact her ability to perform in the packout role, and plaintiff resumed work [*Id.* at 6–7].

In 2021, plaintiff was diagnosed with radial styloid tenosynovitis and Kienböck's Disease [Doc. 1 ¶ 15]. These conditions caused plaintiff to experience a lack of blood flow to her left wrist bones, which in turn resulted in limited use of her left wrist and hand [Doc. 20, p. 8]. Plaintiff also experienced pain and was unable to pick up items without dropping them [*Id.*]. On December 14, 2021, Dr. Timothy Renfree, plaintiff's treating physician, released her to return to work but limited her to no use of her left upper extremity [*Id.* at 8–9]. Defendant thus approved plaintiff's requested medical leave of absence from December 14, 2021, to January 14, 2022, during which time plaintiff collected short-term disability benefits [*Id.* at 9]. On or about April 7, 2022, plaintiff underwent surgery on her left hand and wrist, which included the removal of three bones from her left wrist [*Id.*].

### C. Plaintiff's Termination

On July 8, 2022, Dr. Renfree released plaintiff to return "to work full duty with no restrictions" [Doc. 23, p. 6]. The same day, plaintiff brought Dr. Renfree's note to SRK, first providing it to Human Resources ("HR") Manager Taylor Marsee [*Id.* at 4–6]. Plaintiff also showed Marsee her bruised and scarred wrist and her limited range of motion, demonstrating that she could somewhat move her wrist up and down but not from side to side [*Id.* at 7]. Concerned that HR General Manager, Sheri Frost, might not allow plaintiff to return to work, Marsee accompanied plaintiff to see Frost, to whom plaintiff also provided Dr. Renfree's note and demonstrated her limited range of motion [*Id.*]. After

looking at plaintiff's wrist, Frost stated that SRK had no available jobs for plaintiff [*Id.*; Doc. 20, pp. 4–5]. Frost also suggested that plaintiff seek a release from Dr. Renfree that would allow her to continue receiving disability income [Doc. 20, p. 5]. Plaintiff informed Frost that Dr. Renfree was unwilling to write her anything but a full release [*Id.*]. Defendant then issued a separation notice, which stated that there was no work available with restrictions [*Id.*].

## II. Standard of Review

Summary judgment under Federal Rule of Civil Procedure 56 is proper only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing that no genuine issues of material fact exist. *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339 (6th Cir. 1993) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Furthermore, all facts and inferences that the Court draws from the record before it must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962))); *Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002) (citation omitted).

Yet, "[o]nce the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations." *Curtis Through Curtis v. Universal Match Corp.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Celotex*, 477 U.S. at 317). To establish a genuine issue as to the existence of

a particular element, the nonmoving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder. *Id.* at 250. The court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. Nor does the court search the record "to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989). Thus, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

## III. Analysis

### A. Discrimination Under the Americans with Disabilities Act

Plaintiff argues that she was terminated from her employment because of "her disability, her record of disability, and Defendant's perception of [her] as disabled," in violation of the Americans with Disabilities Act ("ADA") [Doc. 1 ¶ 43]. Additionally, plaintiff claims that defendant failed to accommodate her disability, resulting in her termination [Doc. 23, p. 24]. While plaintiff asserts that she has provided direct evidence

of discrimination, she also argues that indirect evidence presents a genuine dispute of material fact as to defendant's discriminatory behavior [*Id.* at 22].

Defendant argues that neither of plaintiff's claims under the ADA has merit [Doc. 20, p. 1]. Specifically, defendant argues that plaintiff does not have a disability and is not qualified for the packout job because the job requires full use of two hands [*Id.* at 13–14]. Defendant also argues that plaintiff never requested an accommodation and that, even if she had, defendant cannot reasonably accommodate plaintiff's reported limitations [*Id.* at 15–16]. Defendant further submits that plaintiff has not presented direct evidence as to her claims [Doc. 25, p. 3].

The ADA provides that is unlawful for certain "covered" employers to "discriminate against a qualified individual on the basis of disability," which includes discharging and failing to make reasonable accommodations to the limitations of disabled employees. 42 U.S.C. §§ 12112(a), (b)(5). An employer is also required to engage in an "interactive process" with an employee requesting a reasonable accommodation due to a disability "to 'identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.'" *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 871 (6th Cir. 2007) (quoting 29 C.F.R. § 1630.2(o)(3)).

Before addressing plaintiff's ADA discrimination claim, the Court must first consider the parties' arguments as to the type of evidence presented by plaintiff.

### 1. Whether Plaintiff Has Presented Direct Evidence

"[A] plaintiff may attempt to establish unlawful discrimination by introducing direct evidence of discrimination, including evidence that the employer relied upon the plaintiff's disability in making its employment decision . . . or by introducing indirect evidence of discrimination to shift the burden of production to the employer to articulate a legitimate, nondiscriminatory reason for making the adverse employment decision." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1178 (6th Cir. 1996) (citations omitted), *abrogated on other grounds by Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 315–16 (6th Cir. 2012) (en banc). Whether a plaintiff presents direct or circumstantial evidence, "a plaintiff need only prove one or the other, not both." *Hedrick v. Western Rsrv. Care Sys.*, 355 F.3d 444, 453 (6th Cir. 2004) (quoting *Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 348–49 (6th Cir. 1997)).

If a plaintiff presents direct evidence "that the employer relied on his or her disability in making an adverse employment decision," the plaintiff must then "establish a prima facie case by showing 'that [s]he is disabled and otherwise qualified for the position, either with or without reasonable accommodation.'" *Rorrer v. City of Stow*, 743 F.3d 1025, 1039 (6th Cir. 2014) (quoting *Keith v. Cnty. of Oakland*, 703 F.3d 918, 923 (6th Cir. 2013)). If the plaintiff establishes a prima facie case, "the burden shifts to the defendant to show that accommodating the plaintiff would impose an undue hardship on the operation of its business." *Id.* (citation omitted); *see also Monette*, 90 F.3d at 1186 ("The employer will bear the burden of proving that a challenged job criterion is essential, and therefore a

business necessity, or that a proposed accommodation will impose an undue hardship upon the employer.").

"Direct evidence is evidence that proves the existence of a fact without requiring any inferences." *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004) (citations omitted). "Direct evidence is a 'smoking gun' and 'does not require the fact finder to draw any inferences to reach the conclusion that unlawful discrimination was at least a motivating factor.'" *Finley v. Huss*, 102 F.4th 789, 823 (6th Cir. 2024) (citation omitted). Although an employer's "isolated and ambiguous remarks" do not generally provide direct evidence, "when made by an individual with decision-making authority, such remarks become relevant in determining whether there is enough evidence to establish discrimination." *DiCarlo v. Potter*, 358 F.3d 408, 416 (6th Cir. 2004) (citations omitted); *see also Smith v. Chrysler Corp.*, 155 F.3d 799, 805 (6th Cir. 1998) ("[Direct] evidence would take the form, for example, of an employer telling an employee, 'I fired you because you are disabled.'").

Plaintiff argues she has presented direct evidence of her discrimination claim [Doc. 23, p. 15]. In support, she points to her own deposition, in which she testified that Frost told her she was being terminated "because you have a disability and you need to find a doctor to make you have a disability" [*Id.* (citing Doc. 24-1, p. 29)].[1] Plaintiff also argues that the separation notice she received from SRK, which states "no work available with

[1] For ease of reference, the Court's citations to the record will include the respective ECF document and page numbers rather than the exhibit or deposition transcript numbers.

restrictions" is direct evidence that she was terminated due to a disability because a reasonable jury could find that the note shows that defendant regarded her "as having a physical impairment with restrictions" [*Id.*]. Plaintiff further submits that, under the "regarded as disabled" prong, defendant's "100% healed policy" provides additional direct evidence of discrimination [*Id.* at 16 (citing *Henderson v. Ardco, Inc.*, 247 F.3d 645, 653 (6th Cir. 2001))].

In its reply, defendant does not directly dispute plaintiff's deposition testimony as to Frost telling her she was being terminated because she was disabled but rather argues that plaintiff's "assertions are not supported by the undisputed facts" [Doc. 25, p. 4]. In support, defendant also points to plaintiff's deposition, in which plaintiff stated that Marsee and Frost never told her she could not return to work because of her scarring, but rather because of her range of motion issues [*Id.* (citing Doc 20-1, p. 64)].

Here, the Court finds that plaintiff has presented direct evidence of defendant's discriminatory motive. In making this determination, the Court first observes that it must assume all contested facts in favor of plaintiff, the nonmoving party. *DiCarlo*, 358 F.3d at 416; *see also EEOC v. Ford Motor Co.*, 782 F.3d 753, 760 (6th Cir. 2015) (noting that courts usually adopt the plaintiff's version of the facts). Plaintiff's testimony establishes that defendant was "predisposed to discriminate on the basis of" plaintiff's disability and that defendant "acted on that predisposition" by terminating plaintiff's employment. *DiCarlo*, 358 F.3d at 415. Specifically, plaintiff testified that Frost told her she was being terminated because of her disability [Doc. 23, p. 15 (citing Doc. 24-1, p. 29)]. This

statement is neither isolated, because Frost made the statement during the meeting which resulted in plaintiff's termination, nor ambiguous, because the statement is clearly discriminatory in nature. Further, the statement was made by then HR General Manager Frost, an "individual with decision-making authority." *DiCarlo*, 358 F.3d at 416.

As to defendant's argument that the evidence demonstrates that defendant had other reasons for terminating plaintiff, the Court finds that these competing characterizations of plaintiff's testimony "create[] a classic credibility dispute, and 'determining the credibility of witnesses is a task for the jury.'" *Baum v. Metro Restoration Servs., Inc.*, 764 F. App'x 543, 547 (6th Cir. 2019) (citation omitted). Further, because the Court finds that plaintiff's testimony regarding defendant's stated basis for her termination is a "smoking gun," it need not determine whether the other evidence presented qualifies as direct evidence. *Finley*, 102 F.4th at 823.

For the reasons discussed above, the Court will apply the direct-evidence framework in analyzing whether a genuine issue of material fact exists as to plaintiff's disability discrimination claims.

**2. Whether Plaintiff Has a Disability**

Defendant argues that plaintiff does not have a disability [Doc. 20, p. 13]. Specifically, defendant argues that plaintiff admits she does not have a disability nor did defendant consider her to have one [*Id.*]. Rather, defendant contends, defendant found plaintiff to be unqualified for her position "based on her representations to SRK of having restrictions and limitations with her left upper extremity" [*Id.*]. Defendant initially argues

that plaintiff cannot show she has a disability because she is not substantially limited in her ability to perform a major life activity [*Id.*].

Plaintiff responds, arguing that defendant believed plaintiff had a physical impairment and, at the very least, "[g]enuine disputes of material fact exist with respect to [plaintiff's] perceived disability" [Doc. 23, p. 13]. In support, plaintiff points to Frost's written statement, in which Frost observed that plaintiff "could not lift anything with [her] arm" and "could not bend her wrist to either side or up and down" [*Id.* (citing Doc. 24-5, p. 119)]. Plaintiff further argues that her separation notice from defendant, which states "no work available with restrictions" provides support for a finding that defendant believed she had a "physical impairment" [*Id.* at 14]. As to defendant's assertion that plaintiff herself admitted she did not have a disability, plaintiff contends that she is "a lay person and Defendant did not define or clarify the term 'disability'" [*Id.* at 26]. Plaintiff also argues that defendant's "substantially limited" assertion "relies on outdated regulations and standards" [*Id.* (citing 29 C.F.R. § 1630.2(j)(1)(ii))].

Defendant replies, reiterating its argument that plaintiff conceded in her deposition that she did not have a disability [Doc. 25, p. 3 (citing Doc. 20-1, p. 61)]. Defendant also points to plaintiff's representation to defendant that "her limitations and restrictions were permanent" [*Id.* (citing Doc. 20-1, p. 57)]. Defendant further submits that it is undisputed that had plaintiff not provided an "unsolicited, voluntary report of her physical limitations," there would have been no discussions about her ability to return to work [*Id.* at 3–4]. Defendant also argues that plaintiff's conduct in sharing information beyond her doctor's

note demonstrates that she must have had her own doubts about her ability to return to work [*Id.* at 4].

Under the ADA, "disability," as to an individual, is defined as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). An individual is "regarded as having such an impairment" if she demonstrates that "she has been subjected to an action prohibited under [the ADA] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." *Id.* § 12102(3).

Thus, "to state the threshold condition of a 'regarded as' ADA claim, an employee need only show that their employer believed they had a 'physical or mental impairment,' as that term is defined in federal regulations." *Babb v. Maryville Anesthesiologists P.C.*, 942 F.3d 308, 319 (6th Cir. 2019); *see also Baum*, 764 F. App'x at 547 ("To be 'regarded as' disabled, [plaintiff] . . . need not prove a limitation of a major life activity.'") (citation omitted). Under the relevant regulations, a "physical impairment" is "[a]ny physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, such as neurological [or] musculoskeletal." 29 C.F.R. § 1630.2(h)(1); *see also Roush v. Weastec, Inc.*, 96 F.3d 840, 843 (6th Cir. 1996).

The Court finds that a genuine dispute of material fact exists as to whether plaintiff was "regarded as" disabled by defendant. First, defendant's argument about plaintiff's deposition concession is irrelevant because it has no bearing on whether defendant

regarded her as having an impairment on her date of termination. Second, Frost's written statement concerning plaintiff's limitations, even if based on defendant's unsolicited or otherwise voluntary demonstration, could lead a factfinder to conclude that defendant believed plaintiff had a "physical impairment" as broadly defined in the federal regulations. *Babb*, 942 F.3d at 319; *see also Roush*, 96 F.3d at 843 (citing 29 C.F.R. § 1630.2(h)(1)). Third, a factfinder could reasonably find that the separation notice from defendant demonstrates defendant's belief that plaintiff's "restrictions" stemming from her "physiological condition" affected her musculoskeletal system and thus constituted a "physical impairment." 29 C.F.R. § 1630.2(h)(1).

As discussed above, plaintiff has presented direct evidence concerning defendant's perception of her disability. Thus, the Court will proceed under the direct-evidence framework to determine whether a similar dispute exists as to whether plaintiff is otherwise qualified.

### 3. Whether Plaintiff is "Otherwise Qualified"

Under the ADA, a "qualified individual" is an "individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). "Essential functions" are "the fundamental job duties of the employment position" and "does not include the marginal functions of the position." 29 C.F.R. § 1630.2(n)(1). The ADA mandates that "consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written

description . . . for the job, this description shall be considered evidence of the essential functions of the job." 42 U.S.C. § 12111(8). Further, determining "[w]hether a job function is essential is a question of fact that is typically not suitable for resolution on a motion for summary judgment." *Keith*, 703 F.3d at 926 (citing *Kiphart v. Saturn Corp.*, 251 F.3d 573, 585 (6th Cir. 2001)).

Defendant argues that plaintiff is not qualified for the packout job because her "left upper extremity restrictions and limitations" prevented her from being able to perform the two-handed tasks required by the position, including "machine set up, lifting, carrying, sliding, twisting and turning boxes and metal parts, with weights up to 30-40 lbs" [Doc. 20, pp. 14–15]. In support, defendant relies on both its own judgment as well as the written SOPs [*Id.*].

Plaintiff responds, arguing that her successful performance in the role for more than five years prior to her termination proves she "satisfies the requisite skill, experience, education, and other job-related requirements," and the only issue is whether she "could perform the essential functions of the position without reasonable accommodations" [Doc. 23, pp. 17–18]. Plaintiff submits that defendant has not presented any evidence to support its assertion that full wrist flexion is an essential function of the packout position [*Id.* at 22].[2]

---

[2] Plaintiff notes that defendant does not require its employees "to certify that they are able to work without experiencing any pain" [Doc. 23, pp. 11–12]. Plaintiff further submits that her supervisor successfully performs his role without any accommodations despite having hip issues and sometimes working in pain [*Id.* at 12 (citing Doc. 24-4, pp. 16–18)]. The Court construes

### a. Employer's Judgment

Although a court is not required to give "blind deference to the employer's stated judgment," it must grant summary judgment "where an employer's judgment as to essential job functions—evidenced by the employer's words, policies, and practices and taking into account all relevant factors—is 'job-related, uniformly-enforced, and consistent with business necessity.'" *Ford Motor Co.*, 782 F.3d at 765–66 (citation omitted). However, "the employer's judgment will not be dispositive on whether a function is essential when evidence on the issue is 'mixed.'" *Rorrer*, 743 F.3d at 1039 (citation omitted).

According to defendant's judgment, full use of two hands is an essential function of plaintiff's position [Doc. 20, pp. 14–15]. In support, defendant argues that an employee in the packout position must follow each written SOP, which outline tasks that can only be performed with two hands [*Id.* at 15]. Defendant also points to plaintiff's deposition, in which she stated that SRK's motivation in terminating her employment was her range of motion issues, not the surgical scarring around her wrist [*Id.*].[3] Defendant also appears to argue that plaintiff's representations to defendant about her physical limitations and restrictions, which "are consistent with" reports made by other medical professionals within the same time frame, further support defendant's reasonable belief that plaintiff could not perform the essential functions of the job [Doc. 20, p. 12].

---

these statements as plaintiff's contention that she can perform the packout role without reasonable accommodation.

[3] Although defendant provides no citation here, defendant's reply brief includes a citation to plaintiff's deposition in support of the same assertion [Doc. 25, p. 3 (citing Doc. 20-1, p. 64)].

Plaintiff rejects defendant's judgment, arguing that "an 'essential function' of a position is distinct and separate from the way or manner in which an essential function is performed" [Doc. 23, p. 19 (citing 29 C.F.R. app. § 1630.9)]. To this point, plaintiff argues that a reasonable jury could find that "the essential function" of the packout position "is not, for example, to fully flex one's wrist while visually inspecting a part, but rather to cause a part to be fully inspected" [*Id.*]. Plaintiff also points to deposition testimony, in which Marsee admitted that she had not actually determined, but rather only assumed, that a full range of wrist motion was required for the packout position [*Id.* at 18–19 (citing Doc. 24-3, pp. 19–23)].

Defendant replies, arguing that allowing plaintiff to return to the packout job with her limitations "would have exposed her to harm, and would have compromised her and others['] safety, and damage to customer product" [Doc. 25, p. 3]. Defendant again asserts that plaintiff told Frost and Marsee that her wrist "limitations and restrictions were permanent" [*Id.*].

The Court finds that the record supports the employer's judgment as to whether full use of two hands is an essential function of plaintiff's position. First, any part dropped onto the floor by a packout worker must be discarded and not shipped to the customer [Doc. 20, p. 6 (citing Doc. 20-1, pp. 13–14)]. Second, plaintiff's demonstration of her wrist limitations could raise issues of safety risk. Further, defendant's judgment is also "evidenced by [its] words, policies, and practices." *Ford Motor Co.*, 782 F.3d at 765–66. In particular, SRK's handbook provides that employees "returning from medical leave

must present a written statement from the attending physician that indicates he/she is able to return to work with no restrictions," and employees may not return until those restrictions are lifted [Doc. 24-5, p. 27]. Thus, defendant's policy demonstrates its belief that none of the positions at SRK, which necessarily include the packout position, can be performed by an employee with any medical restrictions.[4] Although plaintiff correctly asserts that defendant cannot rely on reports made by other professionals when defendant did not see those reports prior to terminating plaintiff [*see* Doc. 23, p. 21 n.3], the Court does not find that this precludes the Court from considering defendant's other judgment arguments.

Accordingly, defendant's judgment weighs in favor of a finding that full use of two hands is an essential function of plaintiff's position.

**b. Written Description**

As with the employer's judgment as to whether a job function is essential, "the written job description is not dispositive." *Bush v. Compass Grp. USA, Inc.*, 683 F. App'x 440, 446 (6th Cir. 2017) (quoting *Rorrer*, 743 F.3d at 1039); *see also id.* ("[W]hether physical qualifications are essential functions of a job requires the court to engage in a highly *fact-specific* inquiry.") (quoting *Hall v. U.S. Postal Serv.*, 857 F.2d 1073, 1079 (6th Cir. 1988) (emphasis in original).

[4] The Court notes plaintiff's argument that a "100% healed policy" may provide additional direct evidence of discrimination under the "regarded as disabled" prong [Doc. 23, p. 16]. The Court does not, however, find it necessary to reach that argument for purposes of resolving the motion for summary judgment.

As discussed above, defendant relies on the written SOPs to support its argument that "the Packout job requires two (2) hands for machine set up, lifting, carrying, sliding, twisting and turning boxes and metal parts, with weights up to 30-40 lbs, etc." [Doc. 20, p. 15]. In support, defendant provides an example of a written SOP [*Id.* at 2].

In response, plaintiff first points to the written job description for all Production Associates, in which the only physical requirement is the ability to lift up to 40 pounds on a continuous basis, an ability she states she possessed [Doc. 23, p. 18 (citing Doc. 24-1, p. 28)]. Plaintiff also points to the SOP's lack of language concerning wrist flexion [*Id.*].

Defendant replies, arguing that plaintiff affirmed in her deposition that the packout job "includes constant use of hands to put on gloves, pick up, place, remove, grab, rotate, flip 360 degrees, slide, lift, move and stack boxes of parts (weighing 30 pounds or more) and/or individual parts, and machine set-up with plates and pins, to inspect parts for defects and parts" [Doc. 25, p. 2 (citing Doc. 20-1, pp. 6–13)]. Defendant does not respond to plaintiff's arguments as to whether a full range of motion in an employee's wrists is an essential job function.

The Court first observes that plaintiff's arguments focus on the ability to move her left wrist through its full range of motion while defendant characterizes the essential function as requiring the full use of both hands. In any event, the Court finds that plaintiff has shown a genuine dispute of material fact. First, plaintiff correctly observes that the written job descriptions, including the SOP and the general Production Associate description, do not identify the use of two hands as a requirement, much less specify any

range-of-motion requirement. Apart from the ability to lift weights continuously, the only identified physical requirement in the Production Associate position is the "[s]et up and operation of machinery and equipment" [Doc. 20-1, p. 65]. Although defendant uses the phrase "with the use of both hands" numerous times in describing the general process for inspecting and packing a metal part [*see* Doc. 20, p. 6], the SOP submitted for the Court's consideration does not use the term "hand" or "wrist" even once [*see id.* at 2–3]. Likewise missing from the SOP are the terms "rotate," "twist," and "flip" [*see id.*].

Although it might be inferred from the written descriptions that a full range of wrist motion is an essential function of the packout position, deciding what inferences to draw from that evidence is the province of the factfinder, not the Court at the summary-judgment stage. *Anderson*, 477 U.S. at 248. The Court's task at this stage is limited to determining whether a genuine dispute of material fact exists. *Id.* at 250. Here, plaintiff has shown that it does.

Accordingly, the written descriptions factor weighs against a finding that the use of two hands, including a full range of wrist motion, was essential to plaintiff's position.

In sum, considering the employer's judgment and written job description factors, the Court concludes that plaintiff has demonstrated a genuine dispute of material fact regarding whether she is "otherwise qualified" under the ADA. In particular, the Court determines that a factfinder could reasonably resolve this issue in plaintiff's favor by concluding that full wrist flexion is not an "essential function" of the packout position. Further, because the evidence is "mixed," defendant cannot establish at the

summary-judgment stage that the challenged requirement is an essential function, and therefore a business necessity. *Rorrer*, 743 F.3d at 1039 (citation omitted); *see also Monette*, 90 F.3d at 1186.

Accordingly, defendant's motion for summary judgment with respect to the ADA discrimination claim [Docs. 19, 20] is **DENIED**.

**B. Failure to Accommodate Under the ADA**

Plaintiff next argues that defendant failed to accommodate her disability, resulting in her termination [Doc. 23, p. 24].

Defendant argues that plaintiff did not request an accommodation, and defendant thus "had no duty to engage in an interactive process to find" such an accommodation [Doc. 20, p. 16]. Even so, defendant maintains that an accommodation is not reasonable if it results in elimination of an "essential function" of the job [*Id.* (citing 42 U.S.C. § 12111(8))]. Because plaintiff's position "required the use of both upper extremities, including the wrists and hands," defendant maintains that "[t]he undisputed facts show SRK's Frost reasonably believed Plaintiff could not perform the essential functions of the Packout job" [*Id.* at 16–17]. Defendant also argues that, even if plaintiff had requested a transfer as a reasonable accommodation, there were no open positions "that would have met [her] reported limitations or for which she was qualified" [*Id.* at 17 (citing Doc. 20-2, pp. 9–10; Doc. 20-3, p. 4)]. Finally, defendant argues that, even if it had "regarded" plaintiff as disabled, which it denies, it would have had no duty under the ADA to accommodate her [*Id.* at 17–18 (citing 42 U.S.C. § 12201(h); 29 C.F.R. § 1630.9(e))].

In response, plaintiff largely incorporates her prior arguments to establish that she had a disability and was otherwise qualified for her position [*see* Doc. 23, pp. 24–28]. Plaintiff further argues that she did request an accommodation and that defendant "caused the breakdown in the interactive process" [*Id.* at 27]. Plaintiff argues that she was "not required to use magic words such as 'accommodation' and disability'" and that her request to return to work along with her doctor's note releasing her without restrictions were "sufficient to trigger SRK's duty to discuss potential accommodations" [*Id.* at 27–28 (quoting *Fisher v. Nissan North Am., Inc.*, 951 F.3d 409, 419 (6th Cir. 2020))]. Additionally, plaintiff asserts that the only accommodation she needed to remain in the packout position was permission "to perform the task in a different manner than usual" [*Id.* at 27]. Plaintiff further contends that defendant could have also placed her in a different position [*Id.*]. Finally, plaintiff submits that defendant's 100% healed policy and its failure to determine whether she could actually return to work prove that defendant lacked any intent to provide accommodations [*Id.* at 28].

"To establish a prima facie claim for failure to accommodate, 'a plaintiff must show that (1) she was disabled within the meaning of [the statute], (2) she was otherwise qualified for her position, with or without reasonable accommodation; (3) the defendant knew or had reason to know about her disability; (4) she requested an accommodation; and (5) the defendant failed to provide the necessary accommodation.'" *King v. Steward Trumbull Mem'l Hosp., Inc.*, 30 F.4th 551, 560 (6th Cir. 2022) (quoting *Kirilenko-Ison v. Bd. of Educ. of Danville Indep. Schs.*, 974 F.3d 652, 669 (6th Cir. 2020)).

A "reasonable accommodation" includes, in part, "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies." 42 U.S.C. § 12111(9)(B). An employee "bears the burden of proposing an accommodation that will permit her to effectively perform the essential functions of her job." *Ford Motor Co.*, 782 F.3d at 763; *Klieber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 870 (6th Cir. 2007) ("Generally, an ADA plaintiff 'bears the initial burden of proposing an accommodation and showing that that accommodation is objectively reasonable.'"). A covered employer "need not provide a reasonable accommodation . . . to an individual who meets the definition of disability solely under" the "regarded as" prong. 42 U.S.C. § 12201(h); 29 C.F.R. § 1630.9(e).

"Claims that allege a failure to accommodate 'necessarily involve direct evidence.'" *Hostettler v. Coll. of Wooster*, 895 F.3d 844, 853 (6th Cir. 2018) (quoting *Kleiber*, 485 F.3d at 868). The employer bears the burden of "proving that a challenged job criterion is essential, and therefore a business necessity, or that a proposed accommodation will impose an undue hardship upon" the employer. *Fisher*, 951 F.3d at 417 (quoting *Kleiber*, 485 F.3d at 869). "Nonetheless, to overcome summary judgment, the plaintiff generally must identify the specific job he seeks and demonstrate that he is qualified for that position." *Rorrer*, 743 F.3d at 1040 (quoting *Cassidy v. Detroit Edison Co.*, 138 F.3d 629, 634 (6th Cir. 1998)).

Here, the Court's analysis begins and ends with the fourth element of the prima facie case—whether plaintiff requested an accommodation. Although the record suggests that plaintiff intended to return to work when she presented her doctor's note, there is no other evidence that would lead a factfinder to "infer that [the interaction] constituted a request for an accommodation." *Fisher*, 951 F.3d at 419. And, although plaintiff asserts in her declaration that she believes she "could have successfully performed the job duties of other production associate positions," specifically the "Urethane" position, the Court need not consider this affidavit. *See Bush*, 683 F. App'x at 448 ("[A] 'party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts her earlier deposition testimony.'") (quoting *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986)). Further, and in any event, it is undisputed that plaintiff neither identified a vacancy nor requested a transfer as a reasonable accommodation. Thus, plaintiff cannot overcome summary judgment as to this issue. *See Rorrer*, 743 F.3d at 1040 (citation omitted). Additionally, to the extent that plaintiff seeks to establish her disability under the "regarded as" prong, defendant does not have a duty to accommodate her. 42 U.S.C. § 12201(h); 29 C.F.R. § 1630.9(e). Because plaintiff has not shown that she requested an accommodation, the Court need not address whether defendant has shown a business necessity or undue hardship.

Because there is no genuine dispute of material fact regarding whether plaintiff requested an accommodation, plaintiff cannot establish her prima facie case for failure to

accommodate. Accordingly, defendant's motion for summary judgment [Docs. 19, 20] is **GRANTED** with respect to the ADA failure to accommodate claim.

## IV. Conclusion

For the reasons set forth above, defendant's motion for summary judgment [Docs. 19, 20] is **GRANTED in part** and **DENIED in part**. Specifically, defendant's motion is **DENIED** as to plaintiff's ADA discrimination claim. Defendant's motion is **GRANTED** as to plaintiff's ADA failure to accommodate claim.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE